UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 25-25011-CV-WILLIAMS

ELVIN DONALY GARCIA CASTILLO,

    Petitioner,

v.

CHARLES PARRA, *et al.*,

    Respondents.

_____/

## ORDER

**THIS MATTER** is before the Court on Petitioner's Amended Emergency Motion for Preliminary Injunction and/or Temporary Restraining Order ("***Motion***") (DE 8). For the reasons set forth below, Petitioner's Motion (DE 8) is **GRANTED IN PART AND DENIED IN PART**.

**I.    FACTUAL BACKGROUND**

Petitioner Elvin Donaly Garcia Castillo ("***Petitioner***") is a citizen of Honduras who first entered the United States in 2004. (DE 1 ¶ 43). In January 2010, Petitioner was encountered by United States Customs and Border Protection ("***CBP***") while fishing at a marina in Pompano Beach, Florida. (DE 12 at 3). Petitioner admitted to CBP that he had entered the United States unlawfully, and removal proceedings were initiated. (*Id.*) An immigration judge granted Petitioner voluntary departure,[1] and he departed the United States in April 2011. (*Id.*)

---

[1] A voluntary departure order becomes a final order of removal only if the noncitizen fails to depart within the prescribed period. *See e.g., Salpagarova v. Immigr. & Nat. Servs.*, No. 20-61739-CIV, 2020 WL 13550204, at *2 (S.D. Fla. Oct. 20, 2020) (explaining that "if an individual remains in the United States beyond the voluntary departure period, the

In April 2012, Petitioner was arrested in Broward County, Florida, for possession of cocaine, driving under the influence ("**DUI**"), and driving without a valid driver's license. (*Id.* at 3–4). While detained, Miami Enforcement and Removal Operations ("**ERO**")[2] issued an immigration detainer. (*Id.* at 4). In July 2012, Petitioner was convicted of the DUI charge and received a withhold of adjudication on the remaining charges. (*Id.*)

In August 2012, Petitioner was again convicted of DUI in Port St. Lucie County, Florida. (*Id.*) The Department of Homeland Security ("**DHS**") issued a Notice to Appear ("**NTA**"), charging him as inadmissible under § 212(a)(7)(a)(i)(I) of the Immigration and Nationality Act ("**INA**"), as an alien present in the United States without being paroled or admitted. (*Id.*) On October 1, 2012, an immigration judge ordered Petitioner removed. (*Id.*) DHS executed the removal order on October 22, 2012, removing Petitioner to Honduras. (*Id.*)

On June 19, 2013, Petitioner re-entered the United States near Laredo, Texas. (*Id.*) Two days later, on June 21, 2013, DHS reinstated Petitioner's prior removal order, and he was again removed to Honduras. (*Id.*) Later that year, in December 2013, Petitioner re-entered the United States through Laredo, Texas, and settled in Pompano Beach, Florida. (DE 21 at 1).

---

voluntary departure order automatically becomes a removal order" and that a "removal order becomes final upon the person's overstay of the voluntary departure period.").

[2] ERO is a branch of Immigration and Customs Enforcement ("**ICE**"), and "manages all aspects of the immigration enforcement process, including the identification, arrest, detention and removal of aliens who are subject to removal or are unlawfully present in the U.S." *Who We Are, Enforcement and Removal Operations*, USCIS, https://www.ice.gov/about-ice/ero. (last visited Nov. 14, 2025). ICE ERO Miami covers enforcement operations within Miami.

In October 2017, Petitioner was convicted of DUI in Miami. (DE 12 at 5). He was sentenced to 90 days of house arrest, 12 months of probation, and was ordered to pay $2,697.25 in fines. (DE 21 at 2). After satisfying these conditions, Petitioner remained in Pompano Beach, Florida. (*Id.*)

In August 2019, Petitioner was the victim of two armed robberies and cooperated with the Broward County Sherriff's Office in the investigation. (DE 21 at 3). Based on that cooperation, Petitioner filed a petition for U nonimmigrant status ("**U-Visa**") with United States Citizenship and Immigration Services ("**USCIS**") in December 2022. (DE 1 ¶ 45). Petitioner disclosed the robberies as well as his prior convictions and removal history. (DE 21 at 3). In February 2025, USCIS determined that Petitioner's application was bona fide under its 2021 Bona Fide Determination ("**BFD**") Policy. (DE 1 ¶ 46). Consequently, USCIS granted him deferred action and employment authorization. (*Id.* ¶¶ 46–47).

On October 27, 2025, ICE detained Petitioner in Port St. Lucie, Florida, and reinstated his 2013 removal order. (*Id.* ¶ 48; DE 12 at 5). Petitioner has since been detained at the South Florida Detention Center in Miami, Florida.[3] (*Id.*) He now seeks to enjoin his removal based on his deferred action status. (DE 8).

---

[3] On November 14, 2025, Petitioner's counsel notified the Court (DE 15) that Petitioner had been removed from the South Florida Detention Center to the Central Louisiana ICE Processing Center, in contravention of the Court's Order to Show Cause (DE 6). The Court convened a status conference the same day (DE 16; DE 17). During the status conference, the Government represented that Petitioner would be returned to the South Florida Detention Center. Respondents later notified the Court via email that Petitioner had, in fact, been returned. No explanation has been provided as to why Petitioner was removed from the District or why that occurred despite the Court's directive.

## II. DISCUSSION

The Court first addresses the threshold issues of venue and jurisdiction before turning to the merits.

### A. *Venue*

Respondents argue that venue is proper in the Middle District of Florida because Petitioner is detained there. The Court disagrees. Respondents have acknowledged that Krome North Processing Center, which is located within this District, is the designated immigration facility for detainees housed at the South Florida Detention Center. *See C.M. v. Noem*, No. 25-CV-23182, 2025 WL 2400953, at *5 (S.D. Fla. Aug. 18, 2025) (noting that "the Federal Defendants filed a Notice of Material Development, indicating that the EOIR Defendants had publicly designated Krome as the immigration court with jurisdiction over all detainees held at [the South Florida Detention Center]"). Respondents further represented that Krome adjudicates all bond petitions for detainees held there. *See id.* That renders venue proper here, as the officials with immediate custody and authority over Petitioner operate within this District and are subject to this Court's jurisdiction. *See generally* 28 U.S.C. § 1391(e).

### B. *Jurisdiction*

Respondents also invoke 8 U.S.C. § 1252(g). Section 1252 is "Congress's comprehensive scheme for judicial review of removal orders." *Canal A Media Holding, LLC v. United States Citizenship and Immigr. Servs.*, 964 F.3d 1250, 1256–57 (11th Cir. 2020). It bars judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 8 U.S.C. § 1252(g). It "is specifically

directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). "1252(g) is not to be construed broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, United States Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (citing *A.A.D.C.*, 525 U.S. at 472–73). "And although many other decisions or actions may be part of the deportation process, only claims that arise from one of the covered actions are excluded from [a court's] review[.]" *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (internal citations and quotations omitted).

To the extent Petitioner challenges his removal order, or the adjudication of his pending U-Visa petition,[4] the Court would indeed lack jurisdiction under § 1252(g). *See, e.g., Alvarez v. United States Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016) (concluding that § 1252(g) bars courts "from questioning [DHS's] discretionary decisions to commence removal[.]"); *see also Butanda v. Wolf*, 516 F. Supp. 3d 1243, 1250 (D. Colo. 2021) (district court lacked jurisdiction to review or compel adjudication of pending U-Visa application).

"The Court, however, does have jurisdiction to review whether Respondents can legally detain and remove an alien with deferred action status." *Espinoza-Sorto v. Agudelo*, No. 25-cv-23201, 2025 WL 3012786, at *5 (S.D. Fla. Oct. 28, 2025) (retaining jurisdiction to decide whether ICE could detain petitioner with deferred action status). That

---

[4] It should be noted that USCIS granted Mr. Garcia Castillo BFD status notwithstanding full knowledge of his prior arrests, convictions, and removal history. Petitioner's 2022 U-Visa application disclosed each of these events. *See* DE 21-2.

is precisely the claim Petitioner asserts here. Thus, § 1252(g) does not bar jurisdiction. *See Espinoza-Sorto*, 2025 WL 3012786, at *5 (Section 1252(g) did not bar jurisdiction where petitioner's claim arose from the government's grant of deferred action rather than from execution of his removal order); *Sepulveda Ayala*, 2025 WL 2084400, at *5 ("No matter how the Government characterizes [petitioner's] claims, they arise from the Government's decision to grant deferred action and then ignore that grant, not from any discretionary choice about execution of a removal order. Section 1252(g) simply does not reach claims challenging the government's failure to honor benefits it has already granted.").[5]

Having established venue and jurisdiction, the Court now provides an overview of the U-Visa program at issue here.

### C. *U-Visa Program*

In 2000, Congress created the U-Visa as part of the Victims of Trafficking and Violence Protection Act (the "***Act***") to provide immigration protection for victims of certain crimes who assist law enforcement. Pub. L. No. 106–386, § 1513, 114 Stat. 1464 (2000). The Act's stated purpose is to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute cases of domestic violence, sexual assault, [and] trafficking of aliens" by "offering protection to victims of such offenses." Pub. L. 106–386

---

[5] Respondents briefly reference, but do not discuss, 8 U.S.C. § 1252(a)(2)(B)(ii), which separately precludes judicial review of certain discretionary immigration decisions. The Government does not sufficiently develop this argument, and thus it is waived. *See, e.g., Battle v. Comm'r, Soc. Sec. Admin.*, 787 F. App'x 686, 687 (11th Cir. 2019) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.") (quoting *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998)). Even if preserved, it would not bar jurisdiction as Petitioner does not challenge any discretionary immigration decision.

at § 1513(a)(2)(A). To qualify and remain lawfully in the United States, a noncitizen must "ha[ve] been helpful, [be] being helpful, or [be] likely to be helpful in the investigation or prosecution of the qualifying criminal activity of which he or she is a victim." 8 C.F.R. § 214.14(a)(12).

USCIS "has sole jurisdiction over all petitions for U nonimmigrant status." *Id.* § 214.14(c)(1). If USCIS approves a petition, the petitioner receives lawful nonimmigrant status and employment authorization for up to four years. *See* 8 U.S.C. § 1184(p)(3)(B), (p)(6); *see also Patel v. Dir., United States Citizenship and Immigr. Servs.*, No. 25-cv-58, 2025 WL 1295470, at *3 (D. Neb. May 5, 2025) ("If the U visa petition is approved, and the petitioner is present in the United States, the petitioner will receive lawful nonimmigrant status and employment authorization for up to four years").

Congress, however, has limited the number of U-Visas that may be issued annually to 10,000. *See* 8 U.S.C. § 1184(p)(2). That cap has been reached every year since 2010. *I-918, Petition for U Nonimmigrant Status*, USCIS, https://www.uscis.gov/I-918 (last visited Nov. 11, 2025). "This means that depending on the number of U-Visa applications in a given year, many meritorious applicants may not receive a U-Visa." *Salas v. Jaddou*, No. 24-cv-01526, 2025 WL 2158278, at *2 (D. Colo. July 22, 2025). Thus, "anticipating that the statutory cap would be met within the first few years of enactment, USCIS created a regulatory waiting list process." *Hidalgo Canevaro v. Wolf*, 540 F. Supp. 3d 1235, 1239 (N.D. Ga. 2021).

D. *Regulatory Waiting List Process*

Under this process, "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status must be placed on a waiting list." 8 C.F.R. §

214.14(d)(2). "Priority on the waiting list [is] determined by the date the petition was filed with the oldest petitions receiving the highest priority." *Id.*

Once placed on the waiting list, a petitioner receives deferred action or parole and may apply for employment authorization.[6] *Id.* "Deferred action refers to an exercise in administrative discretion under which no action will thereafter be taken to proceed with the applicant's removal from the United States." *De Sousa v. Dir. of United States Citizenship and Immigr. Servs.*, 755 F. Supp. 3d 1266, 1270 (N.D. Cal. Nov. 5, 2024) (citing *A.A.D.C.*, 525 U.S. 471, 484 (1999)). In contrast, "parole allows petitioners 'to leave and re-enter the United States[,]' thereby reuniting many petitioners with their overseas family members." *Arenales-Salgado-De-Oliveira v. Jaddou*, No. 23-61167, 2024 WL 68291, at *3 (S.D. Fla. Jan. 5, 2024) (citation omitted). Without parole, "U visa petitioners are left waiting for years to see their family members abroad, because they cannot travel out of the country without jeopardizing their U visa status." *De Sousa*, 775 F. Supp. 3d at 1270. Importantly, "a petitioner may be removed from the waiting list, and the deferred action or parole may be terminated at the discretion of USCIS." 8 C.F.R. § 214.14(d)(3).

### E. *The 2021 Bona Fide Determination Policy*

"For many years, the waiting list until final adjudication was the only process available for U visa Petitioners." *Ayala v. Noem*, 781 F. Supp. 3d 1187, 1192 (D.N.M. May 6, 2025). In June 2021, USCIS implemented a new Bona Fide Determination ("**BFD**") policy for petitioners residing in the United States. *See* USCIS, Policy Manual, Vol. 3, Part

---

[6] In 2024, USCIS reported that the average processing time for U-Visa petitions (from receipt to BFD status) was 46.1 months. *Historical National Median Processing Time (in Months) for all USCIS Offices for Select Forms by Fiscal Year*, USCIS, https://egov.uscis.gov/processing-times/historic-pt, (last visited Nov. 11, 2025).

C, Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited Nov. 4, 2025) ("**Policy Manual**"). The BFD process was created in response "to drastic increases in the volume of U nonimmigrant petitions and a growing backlog awaiting placement on the waiting list or final adjudication." *Policy Alert: Bona Fide Determination Process for Victims of Qualifying Crimes, and Employment Authorization and Deferred Action for Certain Petitioners*, United States Department of Homeland Security, USCIS, (June 14, 2021), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20210614-VictimsOfCrimes.pdf.

Previously, applicants were ineligible for deferred action or work authorization until they were formally placed on the waiting list. Thus, BFD status allows certain applicants to receive these benefits earlier while their U-Visa applications are still pending. *See* Policy Alert at 1–2. In other words, "deferred action and work authorization are no longer exclusive to petitioners placed on the U-Visa waitlist; bona fide petitioners can also receive these benefits." *Doe v. Mayorkas*, No. 21-cv-02430, 2021 WL 5013740, at *3 (E.D. Pa. Oct. 28, 2021).

"During the BFD process, USCIS first determines whether a pending petition is bond fide[,]" that is, whether it is "made in good faith; without fraud or deceit." Policy Manual, Vol. 3, Part C, Ch. 5. Next, "in its discretion," USCIS "determines whether the petitioner poses a risk to national security or public safety[.]" *Id.* In analyzing these factors, USCIS may exercise its favorable discretion to issue work authorization and grant deferred action. *Id.* A petitioner awarded BFD status "skips the wait list entirely and proceeds directly to 'final adjudication when space is available under the statutory cap.'" *Espino v. United States Citizenship & Immigr. Servs.*, No. 21-cv-21, 2021 WL 6775011,

at *3 (E.D. Vt. Aug. 21, 2021) (quoting USCIS Policy Manual, Vol. 3, Ch. 5). By contrast, "[a]pplicants who fail to meet bona fide determination criteria are placed in line for the wait list adjudication." *Id.* "The principal distinction between a BFD and waiting list placement is parole[.]" *Arenales-Salgado-De-Oliveira*, 2024 WL 68291, at *3 (explaining that the BFD policy alert makes no mention of parole).

Summarizing the overall process, this Court has previously described the four stages of a U-Visa petition as follows:

> Putting the whole process together, the petition for a U visa proceeds through four stages: (1) application is filed pending review, during which time the petitioner is vulnerable to removal but may be granted a discretionary stay of removal; (2) a petition is deemed *bona fide* but not yet adjudicated, at which time the petitioner may receive discretionary EADs[7] and deferred action; (3) petitioner is deemed eligible for a U visa and is consequently placed on the waiting list, at which time the petitioner will be granted deferred action or parole and discretionary EADs; and (4) U visa is issued, and the petitioner is statutorily entitled to EADs.

*Arenales-Salgado-De-Oliveira*, 2024 WL 68291, at *4. With this background in mind, the Court now analyzes Petitioner's request for injunctive relief.

### III.   *Injunctive Relief*

Rule 65 of the Federal Rules of Civil Procedure authorizes courts to grant a preliminary injunction or temporary restraining order before final judgment in limited circumstances. The purpose of this injunctive relief is to "preserve the status quo until the [Court] renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). The primary difference between a preliminary injunction and a TRO is that a TRO "may be entered before the defendant has an adequate opportunity to respond[.]" *Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*,

---

[7] Employment Authorization Documents.

No. 20-cv-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020). As such, the duration of a TRO is limited to fourteen days, absent an extension for good cause. Fed. R. Civ. P. 65(b)(2).

To merit a TRO, as with a preliminary injunction, Petitioner must show:

(1) a substantial likelihood of success on the merits; (2) that the [TRO] is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the [TRO] would cause the other litigant; and (4) that the [TRO] would not be averse to the public interest.

*Gissendaner v. Comm'r, Ga. Dept. of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (quoting *Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014)); *see also Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010) (explaining that "the four criteria for obtaining a preliminary injunction are identical to those for issuance of a temporary restraining order").

### i. *Likelihood of Success on the Merits*

Petitioner is likely to succeed on his claim that his threatened removal is unlawful while his deferred action status remains in effect. Deferred action signifies that "no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *Sepulveda Ayala v. Bondi*, No. 25-cv-01063, 2025 WL 2084400, at *7 (W.D. Wash. July 24, 2025) (citing *A.A.D.C.*, 525 U.S. at 484). *See also Georgia Latino Alliance for Human Rights v. Governor of Georgia,* 691 F.3d 1250, 1258 n.2 (11th Cir. 2012) (explaining that deferred action status "amounts to, in practical application, a reprieve for deportable aliens. No action (i.e., no deportation) will be taken . . . against an alien having deferred action status."); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020) ("The defining feature of deferred action is the decision to defer removal (and to notify the affected alien of that decision).").

Here, it is undisputed that USCIS granted Petitioner BFD status in February 2025, thereby extending deferred action. That determination reflects DHS's own choice to defer Petitioner's removal while his U-visa petition remains pending. *See generally Arpaio v. Obama*, 27 F. Supp. 3d 185, 193 (D.D.C. 2014) ("In the context of the immigration laws, deferred action represents a decision by DHS not to seek the removal of an alien for a set period of time. In this sense, eligibility for deferred action represents an acknowledgment that those qualifying individuals are the lowest priority for enforcement."); *Texas v United States*, 809 F.3d 134, 196 (5th Cir. 2015) (King, J., dissenting) ("Much like pretrial diversion in the criminal context—which also developed over a period of decades without express statutory authorization—deferred action channels limited resources by allowing certain low-priority offenders to work openly and contribute taxes, thus reducing their burden on the system. Notably, such prosecutorial discretion is heightened in the immigration context."). By detaining Petitioner and seeking to execute a reinstated removal order, ICE appears to be acting contrary to DHS's exercise of discretion and the protections that accompany it. On these facts, Petitioner has shown a strong likelihood of success on the merits.[8] *See Espinoza-Sorto*, 2025 WL 3012786, at *6 ("Petitioner has a likelihood of success on the merits of his claim that it is unlawful to remove him while he has deferred action status. Indeed, by granting Petitioner deferred action status, Respondents affirmed that they would take no action to remove him while that status was in effect. Therefore, Respondents shall not remove Petitioner unless and until his deferred action status is revoked."); *see also Sepulveda Ayala*, 2025

---

[8] As acknowledged by Judge Gayles in *Espinoza-Sorto*, the case law addressing whether the Government may detain or remove a noncitizen with deferred action status remains limited.

WL 2084400, at *7 ("[Petitioner's] interpretation of deferred action—that the Government will refrain from executing his removal—finds strong support in Supreme Court precedent, circuit authority, and USCIS policy. In sum, [Petitioner] has shown a likelihood of success on his habeas petition that his detention is unlawful.").

### ii.   *Irreparable harm*

The Court next considers whether Petitioner has demonstrated that, absent the requested relief, he will suffer irreparable harm. That Court concludes that he has. "To demonstrate irreparable harm, a movant must show 'that the injury cannot be undone through monetary remedies.'" *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020) (citation omitted).

Here, removal would separate Petitioner from his young child, terminate his pending U-Visa petition, and extinguish the benefits of his deferred action status that USCIS has already granted. Such harms are indeed irreparable. *See Espinoza-Sorto*, 2025 WL 3012786, at *8 ("Petitioner will experience irreparable harm if he is removed before his U-Visa Application is adjudicated. Indeed, by removing him, he will effectively lose all the benefits of the government-conferred deferred action status."); *see also Sepulveda Ayala*, 2025 WL 2084400, at *9 ("[Petitioner] faces deportation, family separation, and additional hurdles in the U-visa process if removed. He will also be unable to use the benefits the Government has affirmatively granted him, including his authorization to work legally in the United States, if ICE removes him."); *Maldonado v. Noem*, 25-CV-2541, 2025 WL 1593133, at *3 (S.D. Tex. June 5, 2025) (finding irreparable harm where "[r]emoval would also permanently terminate Petitioner's deferred action and work authorization, extinguishing his lawful status with no concrete avenue for

reinstatement if he prevails in this action."); *Salzar v. Robbins*, No. 25-cv-05473, 2025 WL 2633128, at *4 (C.D. Cal. June 18, 2025) (emphasizing that "[i]mminent and potentially permanent removal from the country is obviously one of the most irreparable injuries one could suffer"); *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (emphasizing "the economic burdens imposed on detainees and their families as a result of detention").

### iii.   *Balance of Equities and Public Interest*

The final two TRO factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both weigh in favor of Petitioner. The Government has already conferred deferred action and work authorization to Petitioner. Enjoining removal merely enforces the Government's own determination. *See Sepulveda Ayala*, 2025 WL 2084400, at *9 (granting injunctive relief "would impose little to no prejudice on the Government, which has already issued deferred action and BFD EAD benefits to [petitioner]"). Moreover, "[t]he public interest also favors ensuring that the Government does not detain or deport individuals without a legal basis." *Id.*  In sum, the Court concludes granting injunctive relief imposes no meaningful burden on Respondents.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Motion for Preliminary Injunction and/or Temporary Restraining Order (DE 8) is **GRANTED IN PART AND DENIED IN PART**.
2. Respondents shall not remove Petitioner from the United States while he has deferred action status. The stay of removal shall expire 72 hours after

adjudication of Petitioner's U-Visa Application and revocation of his deferred action status.[9]

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>1st</u> day of December, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[9] It is undisputed that Petitioner is detained pursuant to a reinstated removal order under 8 U.S.C. § 1231(a). He is therefore not entitled to a bond hearing before an immigration judge. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) (noncitizens detained pursuant to § 1231 are not entitled to bond hearings); *see also Shaikh v. Meade*, No. 21-cv-23752, 2022 WL 84420, at *5 (S.D. Fla. Mar. 22, 2022) ("Given the unambiguous language of the Supreme Court's most recent holding [in *Guzman*] that noncitizens detained for removal under § 1231 are not entitled to a bond hearing, the Court determines that Petitioner is not entitled to a bond hearing."). Moreover, *Zadvydas v. Davis*, is inapplicable at this stage as Petitioner has not yet approached the six-month detention period. 553 U.S. 678, 701; *Espinoza-Sorto*, 2025 WL 3012786, at *8 (*Zadvydas* claim was premature where deferred action petitioner had only been detained four months).